WHEATLEY *v.* WARREN.

5-2108                                    334 S. W. 2d 880

Opinion delivered May 2, 1960.

[Rehearing denied May 30, 1960]

124

*R. Julian Glover; Wootton, Land & Matthews; Wood, Chesnutt & Smith,* for appellant.

*Richard W. Hobbs,* for appellee.

CARLETON HARRIS, Chief Justice. This is an appeal from a judgment of the Garland Circuit Court wherein the action of the County Judge, H. C. Warren, in dismissing the board members of the Ouachita General Hospital of Garland County, was upheld. The record reflects that Judge Warren assumed office as County Judge of Garland County on January 1, 1959, and attended a meeting of the Board of Governors on January 2d, at which meeting the Judge presided. At that time, Judge Warren asked for the resignation of all members of the board, stating that certain members had not conducted themselves properly, and that he would be unable to work with certain members of the board. No resignations were submitted, and Judge Warren obtained the appoint-

ment of a "Citizens Committee" to investigate conditions at the hospital. One member was appointed by the City Council, one by the Chamber of Commerce, one by the Garland County Medical Association, and one was appointed to represent the Quorum Court, Judge Warren being the fifth member. This committee went to the hospital, together with Judge Warren's attorney, and there heard testimony from various witnesses, mostly persons who held complaints against the hospital. No member of the board was present during the taking of testimony. Subsequently, a report was prepared by Judge Warren's attorney, setting forth the findings of the committee, and making the recommendation that the board should resign, but this report was not signed by any member of the committee. Thereafter, Judge Warren notified the members of the board that a hearing would be conducted for the purpose of determining whether the members should be removed from the board. Following the filing of various motions, such hearing was conducted, and on April 29, 1959, Judge Warren directed the following letter to the board:

"April 29, 1959

Board of Governors
Ouachita General Hospital
Hot Springs, Arkansas

Gentlemen:

This is to advise you that based upon the Citizen's Committee Report; facts developed at the hearing held as a result of my request that each of you tender your resignations, and based upon the Statutes of Arkansas relative to the duties placed upon members of the Board of Governors of county hospitals and the general law of Arkansas, I find that each of you should be removed from your present position as a member of the Board of Governors of the Ouachita General Hospital, and this action is taken for the general betterment of the operation of the hospital.

According to the evidence and testimony presented at the hearing, it does not appear that all of the mem-

bers of the present Board of Governors were aware of certain conditions that existed and of certain transactions that transpired, but that, in my opinion, does not excuse those members as it was the duty of each member to acquaint himself with all aspects of the operation of the Ouachita General Hospital.

You are hereby relieved from your duties as of the 1st day of May, 1959.

> (signed)   H. C. Warren
> H. C. (Dusty) Warren,
> County Judge"

Appellants filed a "Petition for Review" with the Circuit Court of Garland County, and on October 6th, 1959, that court affirmed the action of the County Judge in dismissing the board. From such judgment comes this appeal. For reversal, appellants assert three points, as follows:

## "I.

The Board of Governors of Ouachita General Hospital were never informed of the causes of their removal and the letter of H. C. Warren, County Judge of Garland County, Arkansas, dated April 29, 1959, notifying the Board of Governors of their removal did not specify any of the causes or grounds for removal upon which the action was predicated.

## II.

The causes for removal cited in the order of the Circuit Court of Garland County, Arkansas, of October 7, 1959, affirming the action of the County Judge in removing the members of the Board of Governors of Ouachita Hospital do not show sufficient grounds for removal.

## III.

The hearing by H. C. Warren as County Judge of Garland County, Arkansas, conducted in connection with the removal of the Board of Governors did not meet

the requirements of due process or of Justice and fair dealing.''

In view of the conclusion we have reached, only points one and three will be discussed, and will be considered in reverse order.

At the outset of the proceeding, appellants moved that Judge Warren disqualify himself from presiding at the hearing, alleging that he was personally and politically biased and prejudiced against the members of the board, was personally interested in the outcome of the hearing, and had individually instituted actions in the Chancery Court against members of the Board. Judge Warren ignored this motion to disqualify, and the Circuit Court refused to grant a petition for a writ of mandamus requiring Warren to disqualify. This Court, in a Per Curiam order of March 23, 1959, denied petition for writ of mandamus and for a stay order, holding that the county judge ''is not disqualified to act in what is essentially an administrative matter.'' As a basis for the motion, appellants point out that Judge Warren requested the resignation of the board almost immediately upon being inaugurated as county judge, and that this fact clearly showed that his mind was already made up that the board should be removed, prior to conducting the hearing. Evidence also reflected that during the political campaign of 1958, Judge Warren ran a political advertisement wherein Hill Wheatley, chairman of the board, was accused of active political interest in behalf of Judge Warren's opponent; in their brief, appellants further state:

''. . . that at a so-called 'Citizens Committee' hearing which drafted the report, the meeting was presided over by appellee, the witnesses were provided by him and that no member of the Board was called or asked to appear before the Committee; that appellee's mind had been made up prior to the hearing and that he had a personal interest in the outcome of two lawsuits pending in the Chancery Court of Garland County, Arkansas.''

Of course, though the hearing was essentially administrative, it was ''Quasi-judicial'' in nature, and appel-

lants cite authority from McQuillin on Municipal Corporations and American Jurisprudence to support their contention that appellee should have disqualified. For instance, in 42 American Jurisprudence, § 137, p. 479, it is stated:

". . . An administrative hearing in the exercise of judicial or quasi-judicial powers must be fair, open and impartial. The right to such a hearing is an inexorable safeguard and one of the rudiments of fair play assured to every litigant by the Fourteenth Amendment as a minimal requirement. There can be no compromise on the footing of convenience or expediency, or because of a natural desire to be rid of harassing delay, when that minimal requirement has been neglected or ignored. The breadth of administrative discretion places in a strong light the necessity for maintaining in its integrity the essentials of a fair and open hearing. When such a hearing has been denied, the administrative action is void. The requirements of fairness are not exhausted in the taking or consideration of evidence, but extend to the concluding parts of the procedure as well as to the beginning and intermediate steps."

At page 311, § 21:

"An administrative officer exercising judicial or quasi-judicial power is disqualified or incompetent to sit in a proceeding in which he has prejudged the case, or in which he has a personal or pecuniary interest, where he is related to an interested person within the degree prohibited by statute, or where he is biased, prejudiced, or labors under a personal ill-will toward a party."

We agree that this correctly states the law; however, there is an exception, which is mentioned in § 22. That exception occurs where the authority of the administrative officer is exclusive, and no legal provision for calling in a substitute is provided. In Corpus Juris Secundum, Vol. 67, § 66, p. 277, a concise, though thorough statement relating to disqualification is found.

"A board or official assuming to try charges against an officer or employee must establish its jurisdiction to

do so when challenged, since there is no presumption as to its power in this respect. While it is sometimes provided that the trial or hearing may be conducted by the head of the department in which the person charged is serving, ordinarily it is necessary that the hearing be before an unprejudiced official, where a hearing before such a person can be had without disregard of the terms of the statute providing for the hearing and without defeating its purpose. *Where the statute clearly requires the hearing to be held before a designated administrative officer, and no other officer can hold the hearing, the language of the statute may not be disregarded, or the legislative intent defeated, by holding that the designated officer is disqualified.*[1]

Mere prejudice or alleged prejudice on the part of an official authorized by statute to remove does not affect his right to remove an officer or employee in conformity with statutory proceedings where no provision is made for a hearing before another official in such a case; and the fact that a superior officer authorized to try his subordinates on charges preferred had previously reprimanded or disciplined them does not *per se,* in the absence of statutory mandate prohibiting it, disqualify him from trying them on charges preferred. The power of removal is not confined to matters with respect to which the officer conducting the hearing has no personal knowledge or as to which charges have not been made or instigated by him, and such superior officer may make charges on his own knowledge and remove the officer or employee charged if, after a hearing, he determines that such charges are sustained.''

Our statute, relative to the appointment of county hospital boards, is § 17-1502, Ark. Stats. Anno., and provides that the board of governors shall consist of seven members, qualified electors of the county wherein the hospital is located, and who shall be appointed by the county judge for staggered terms from one to seven years. Further:

---

[1] Emphasis supplied.

"All appointments made to fill vacancies caused by expiration of terms or by death shall be for a period of seven (7) years and such method shall be followed in making such appointments until each member of the board shall be appointed for a term of seven (7) years. The duty to appoint the initial members of this board and to fill vacancies in case of death, resignation, expiration of terms, *or for any other reason*[2] shall be that of the County Judge. In the event of misconduct or refusal to act, any member of the Board may be removed for cause."

Since, under our statute, the sole authority to appoint and remove is placed in the County Judge, hearings for determination of whether board members should be removed are exclusively within his jurisdiction, and appellants' contention for disqualification cannot be sustained.

We come now to a consideration of appellants' listed point No. 1. Generally, proceedings for removal are commenced by furnishing an officer or employee with a notice or statement setting forth the reason or grounds for discharge or proposed discharge. In some states, there is a statutory requirement that this be done. Our statute makes no such requirement, but this Court has held that the authority to remove officials "for cause" carries with it the implied restriction, that upon accusation being made, the cause must be stated, with leave to the accused to present his defense. See *Williams* v. *Dent,* 207 Ark. 440, 181 S. W. 2d 29. Written charges were not preferred in the instant case; however, pursuant to a request by appellants' counsel, the attorney for Judge Warren, a few days prior to the hearing, directed a letter to appellants' attorney, specifying certain charges, as follows: a violation of Act 481 of 1949, as amended, which requires the submission of monthly reports of the hospital operations to the county judge and quorum court; the awarding of the laundry contract of the hospital to a member of the board;[3] disagreement between personnel of the hospital and the Welfare Department, which had resulted in the latter's refusal to send patients to the

---

[2] Emphasis supplied.
[3] See *Warren* v. *Reed,* 231 Ark. 714, 331 S. W. 2d 847.

hospital; refusal of the Board of Governors and Administrator to pay several thousand dollars due the Southwest Blood Banks; refusal to permit patients in the hospital to leave that institution until proper arrangements had been made for payment of their bills; and the use of $15,000 of hospital funds for the purchase of real estate, and the taking of the deed in the name of the hospital rather than the county.[4] Evidence relating to these charges was presented at the hearing, and evidence was also presented relative to alleged misconduct, not specifically included in counsel's letter; for instance, testimony was offered to the effect that state welfare patients, whose medical expense had been paid in full by the State Welfare Department, had received additional bills from the hospital.

Testifying at the hearing were Jerry Poe, Chamber of Commerce member of the Citizens Committee, Dr. Lon E. Reed, Citizens Committee representative of the Garland County Medical Society, Kenneth P. Cain, committee representative from the City Council, Fred Shelton, County Clerk of Garland County, Richard Hobbs, Judge Warren's attorney, George C. Allen, Secretary to the County Judge, Mrs. Iva Harris, Juvenile Probation Officer, Mrs. Gladys Ridgeway, Director of Public Welfare in Garland County, Harry Keaton, Certified Public Accountant, S. T. Whitworth, Administrator of the Hospital, DeVere Dierks, member of the board, J. Muriel Reed, member of the board, Hill A. Wheatley, member of the board, Mose Holiman, member of the board, and J. M. Lowrey, former County Judge. The "Citizens Committee" report was offered in evidence, though the testimony of the three committee members was not entirely in accord with the report. Various alleged offenses were included in the testimony, and the four board members, along with certain of the above witnesses who testified in their behalf, offered testimony in defense of the charges against them.

It is at once obvious, from a study of the transcript, that some of the accusations made at the hearing, even

---

[4] See *Warren* v. *Wheatley*, 231 Ark. 707, 331 S. W. 2d 843.

though sustained, would not justify removal. We are unable to determine whether the Judge was justified in ordering the removal of the board, for we do not know which charges and proof he relied upon.

This Court has emphatically stated upon two occasions that in removing an official from office, the specific charges upon which the removal was based, must be stated. In *Williams* v. *Dent, supra,* we said:

"It is not enough, in the affirmative language of a resolution, to throw a cloak of anonymity over the cause and arbitrarily assert that cause exists. * * * It may have been that purely personal dislike, or incompatibility not associated with official duties, animated the final result. If this were the basis of removal there was no cause within the meaning of the statute."

In *Martin* v. *Cogbill, Commissioner,* 214 Ark. 818, 218 S. W. 2d 94, this Court stated:

"The record in this case is a voluminous one and the review of all the testimony would require an opinion of interminable length, but it is certain that all the charges were not sustained and it is doubtful if any of them were. It cannot be known therefore whether Cogbill was removed upon testimony legally sufficient to support a charge constituting cause of removal. * * * Nevertheless the order of the Council in ordering Cogbill's removal imputes the finding that his presence and continued service on the board is inimical to the public welfare, or that he is unfit to occupy that position. He was entitled therefore to know upon what specific finding he was ordered removed.

It may also be said that testimony was offered as to certain alleged derelictions not specified in the petition to the Council praying Cogbill's removal, and for aught we know from the record before us the Council's action may have been based upon that testimony, and if so that action was unauthorized. See *Williams* case, *supra.*"

The latter paragraph might well apply in this case, for testimony was offered at the hearing in regard to certain alleged practices at the hospital which, if true, were inimical to the welfare of the institution.

It will be noted in reading Judge Warren's letter of dismissal to the Board, heretofore set out in full, that no specific reasons were given for removing the board. They are only told that the dismissal is "based upon the Citizen's Committee Report; facts developed at the hearing as a result of my request that each of you tender your resignations, and based upon the Statutes of Arkansas relative to the duties placed upon members of the Board of Governors of county hospitals and the general law of Arkansas * * *." This covers a multitude of matters and alleged infractions, and we are, of course, unable to determine the particular acts relied upon by the County Judge to sustain his action.

The judgment of the Garland Circuit Court is therefore reversed, but without prejudice to appellee's right to proceed in a manner not inconsistent with this opinion.

McFADDIN, J., not participating.

