Clancy T. WATSON, Plaintiff-Appellant,

v.

CITY OF GATLINBURG, et al.,
Defendants-Appellants.

Court of Appeals of Tennessee,
Eastern Section.

June 27, 1985.

Permission to Appeal Denied by
Supreme Court Oct. 7, 1985.

Robert L. Ogle, Jr., Ogle, Wade & Wynn, Sevierville, for plaintiff-appellant.

Ronald E. Sharp, Hailey, Waters, Sykes & Sharp, Sevierville, for defendants-appellants.

## OPINION

FRANKS, Judge.

The plaintiff, an employee of the City of Gatlinburg Fire Department, was terminated by defendant-city manager and, subsequent to an evidentiary hearing, the manager affirmed plaintiff's dismissal on the grounds of "disgraceful personal conduct".

Plaintiff appealed his dismissal to the Circuit Court of Sevier County and upon review by the trial judge the dismissal was set aside, with directions to the city that plaintiff be afforded another hearing before the city commissioners. Both parties have appealed.[1]

Plaintiff's dismissal was based on an incident occurring at the Municipal Jail on May 20, 1979. Shortly after the incident, plaintiff was placed on probation with the other employees involved and subsequently a civil action was brought by a prisoner against plaintiff and others, resulting in a trial court judgment for compensatory and punitive damages against the plaintiff, which was set aside on appeal and remanded for a new trial. On June 29, 1982, the city manager notified plaintiff he was suspended without pay and further informed plaintiff that unless he requested a hearing he would be dismissed as a city employee at the end of 10 days. Plaintiff requested a hearing and the hearing was conducted before the city manager on July 29, 1982. On August 4, 1982, the city manager affirmed plaintiff's termination and made the following pertinent findings:

As you are undoubtedly aware, your termination was based upon disgraceful personal conduct while on duty as a City employee. More specifically, you were terminated for personal action that resulted from event(s) on May 20, 1979 regarding a City prisoner named, Danny Gianfrancisco. Other than placing you on probation, no other personnel action had been instigated by the City due to your pending litigation regarding the Danny Gianfrancisco event.

The Appeal Hearing revealed that you were personally perceived as being of sound character with an unblemished and long tenure while employed by the City of Gatlinburg. The record will also show that your participation on the referenced evening of May 20, 1979, regarding the event(s) which lead to your termination was in concert with other City employees and a private citizen (not in the employment of the City).

The testimony of your fellow City employees, however, confirms your participation in the event(s) that lead to your termination to be that of a major role.... [T]hat they saw you holding a mop handle through the bars of the jail cell as the prisoner demonstrated an act of oral sex. Two ... also, testified that a hazardous chemical (ammonia) had been applied to the mop handle on a visit to the cell in which another instance of oral sex by the prisoner transpired. On a third visit by you to the jail cell, ... testified that they saw you with the finger printing ink that eventually was used by the prisoner for a display of masturbation. On three (3) different occasions Captain Buddy Parton testified that you were requested to leave the prisoner alone. It was only after the finger printing ink incident that you finally heeded Captain Parton's direction.

The manager's fact finding included:

.    .    .    .    .

(2) you *directly* participated in the event(s) that lead to the litigation regarding the prisoner; [emphasis original]

(3) you knowingly allowed a prisoner in custody of the City to have oral contact with a chemical considered hazardous for human consumption;

(4) no other City employees' participation was as extensive as yours; and,

---

1. Prior to arguments in this court, the city commissioners conducted another hearing and, again, discharged plaintiff. An appeal on the subsequent dismissal is pending in the Circuit Court of Sevier County. A transcript of the evidentiary proceeding before the city commission has been filed in this record but is not properly before this court for consideration.

(5) as a senior employee of the City your conduct would be expected to be that of professional and not that which would be degrading to a human being.

The trial court recognized the charter and ordinances of the City of Gatlinburg provide for employee discipline and discharge by the city manager; however, the court stated: "[T]he method proceeded upon by the City Manager is the inappropriate method of providing a pre-termination hearing in this cause."

Section 8 of the Charter of the City of Gatlinburg provides, in pertinent part:

The Recorder, Chief of Police, City Attorney, and all other officers, agents, and employees shall be appointed by the City Manager and removed by him at any time.

Section 5 of the charter provides another method by which the Board of Commissioners may remove all types of personnel. The charter provides:

The Mayor or any Commissioner or any employee may be removed from office by the Board of Commissioners . . . .

The board has enacted Ordinance No. 600, which provides for hearings and an appeal process before the city manager. The ordinance is not in the record; however, a handbook which outlines its substance is, and the hearing afforded the plaintiff is prescribed by the handbook and was followed by the city manager.

■ Apart from the ordinance, the Charter of the City of Gatlinburg vests the city manager with full authority to appoint and remove city employees at his discretion, and charter provisions are mandatory. *State v. City of Knoxville*, 203 Tenn. 622, 315 S.W.2d 115 (1958); *Rutherford v. City of Nashville*, 168 Tenn. 499, 79 S.W.2d 581 (1935). The Personnel Handbook reiterates the charter provision that city managers are vested with full removal power. While the charter provides at Section 5 that the board of commissioners may have removal power, this provision is not mandatory; thus, the charter language establishes that the termination of appellant, instigated by the city manager, is a proper exercise of the manager's power under the charter. The authority to remove public officers and employees may be vested in a designated officer and he alone may conclude whether or not removal is appropriate. 67 C.J.S., *Officers*, § 160, provides: "Where the statute requires the hearing to be held before a designated administrative officer, and no other officer can hold the hearing, the language of the statute may not be disregarded, or the legislative intent defeated, by holding the designated officer is disqualified." Courts of numerous jurisdictions have quoted this language with approval and stressed the fact that such discretion, if mandated by statute, may be properly placed in one individual. *See e.g., Wheatley v. Warren*, 232 Ark. 123, 334 S.W.2d 880 (1960); *Emerson v. Hughes*, 117 Vt. 270, 90 A.2d 910 (1952); *Bourgeois v. Orleans Parish School Board*, 219 La. 512, 53 So.2d 251 (1951).

■ The issue before the trial court was whether the city manager exceeded his authority, acted fraudulently or illegally or arbitrarily. *Hoover Motor Exp. v. R.R. & Pub. Util.*, 195 Tenn. 593, 261 S.W.2d 233 (1953). There is ample material evidence in the record to support the findings of fact made by the city manager. We also conclude the manager acted within the authority vested in him by the charter of defendant city.

■ The plaintiff, on appeal, argues the disciplinary proceedings against him constituted a denial of equal protection of the law as it was discrimination to single out the plaintiff for punishment when other employees were involved. The record establishes, and as the city manager in his conclusions observed: "While it has been noted that others witnessed your conduct, it is clear . . . that no other City employee instigated actions that led to the event(s) [and] . . . your conduct on the evening of May 20, 1979 was more disgraceful in every respect in comparison of City employees with a third of your tenure that were present that evening."

The plaintiff also asserts the city was guilty of laches in delaying discipline. The city manager gives as one of the reasons for the delay the pending civil action and the plaintiff does not affirmatively establish that the intervening delay has prejudiced him, which is necessary to invoke the doctrine. *Needham v. Caldwell et al.*, 25 Tenn.App. 189, 154 S.W.2d 535 (1941).

The charter of the City of Gatlinburg vested jurisdiction in the city manager and the hearing conducted under that jurisdiction was neither illegal nor arbitrary and material evidence supports the determination by the manager. We have considered the other issues raised and find them to be neither meritorious nor properly before us. Accordingly, the judgment of the trial court is reversed and the dismissal of plaintiff from his employment is affirmed, and the cause remanded, with costs of appeal assessed to Clancy T. Watson.

PARROTT, P.J., and GODDARD, J., concur.