## IN THE COURT OF APPEALS OF TENNESSEE, AT NASHVILLE

**FILED**

**September 3, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

|  |  |  |
|---|---|---|
| **KEVIN SANDERS and** | ) | Lincoln County Chancery Court |
| **PATRICIA SANDERS**, | ) | No. 10,982 |
|  | ) |  |
| Plaintiffs/Appellants. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 01A01-9902-CH-00111 |
|  | ) |  |
| **LINCOLN COUNTY and** | ) |  |
| **STEVE GRAHAM, Chairman of** | ) |  |
| **Lincoln County Commission**, | ) |  |
|  | ) |  |
| Defendants/Appellees. | ) |  |
|  | ) |  |

From the Chancery Court of Lincoln County at Fayetteville.
**Honorable Lee Russell, Judge, Sitting by Interchange**

**Kevin Sanders**, *Pro Se*

**Gregory H. Oakley**, MANIER & HEROD, Nashville, Tennessee
Attorney for Defendants/Appellees.

OPINION FILED:

**REVERSED AND REMANDED**

**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**LILLARD, J.**: (Concurs)

Plaintiffs Kevin and Patricia Sanders appeal the trial court's judgment which dismissed their complaint against Defendants/Appellees Lincoln County and Steve Graham, Chairman of the Lincoln County Commission, based upon the court's rulings that the complaint failed to state an equal protection claim against the Defendants and, alternatively, that the Sanders' equal protection claim was barred by principles of *res judicata*.[1] We conclude that both of these rulings were in error and, thus, we reverse the trial court's judgment and remand this cause for further proceedings consistent with this opinion.

The Sanders own a 316-acre farm in Lincoln County upon which they raise cattle. The Sanders' farm is bisected by Martin Hollow Road, a public road that has been maintained by Lincoln County since at least 1975. In addition to the Sanders, several other area residents must use Martin Hollow Road to access their homes.

Until 1996, the Sanders maintained stock gaps (or cattle guards) on Martin Hollow Road at the two points where the road crosses their property lines. Along with fencing around the property's perimeter, the stock gaps prevented the Sanders' cattle from leaving the property. Although the perimeter fencing and stock gaps effectively contained the Sanders' cattle on their property, within the confines of the property the cattle crossed Martin Hollow Road at will. Consequently, some of the area residents who used Martin Hollow Road complained that the Sanders' cattle had caused several accidents and near-accidents on the road.

In response to these and other complaints, the Lincoln County Highway Committee recommended that the County remove stock gaps from all County roads. The Lincoln County Commission did not formally adopt the Highway Committee's recommendation at the time it was made in July 1996, but the Commission agreed that it needed to address the problem and it subsequently implemented a general policy of removing stock gaps from all County roads.

At the Commission's direction, County Executive Jerry Mansfield sent letters to

---

[1]The Sanders are *pro se*. Mr. Sanders attempted to file a brief on behalf of both himself and his wife. However, there is no indication in the record that Mr. Sanders is an attorney authorized to represent Ms. Sanders.

Kevin Sanders and three other landowners asking them to fence their land to prevent cattle from roaming on County roads. The other landowners agreed to comply with the Commission's request, either by fencing their land or by otherwise taking steps to keep their cattle off the roads; however, Kevin Sanders refused to fence his property along Martin Hollow Road or to remove his stock gaps from the road because of the considerable expense involved.

In March 1997, the Commission passed a resolution requiring the removal of stock gaps from Martin Hollow Road. The resolution applied only to Martin Hollow Road; it did not refer to any other County roads affected by the County's stock gap removal policy.

The following month, the Sanders filed a complaint in the Chancery Court of Lincoln County seeking an injunction against enforcement of the Commission's resolution. The Sanders' complaint named as defendants County Executive Jerry Mansfield and County Road Superintendent Donny Ray Hudson. Among other claims, the Sanders contended that the Commission's resolution denied them equal protection of the law[2] because the resolution unfairly singled them out and did not apply to similarly-situated landowners in the County.

After conducting a trial at which extensive testimony was presented, the chancellor entered a memorandum opinion and judgment rejecting the Sanders' equal protection claim. As pertinent, the chancellor's memorandum opinion indicated that

> the facts in the case are virtually undisputed. The [Sanders] own in fee simple land on either side of Martin Hollow Road in a rural part of Lincoln County, Tennessee. The road is a gravel road that has been maintained by Lincoln County for decades and has been shown as a public road on the work map of the county during the entire term of the current road superintendent. . . .
>
> Multiple families live on Martin Hollow [R]oad beyond the [Sanders'] section of the road and beyond the stock gaps across the [Sanders'] section of the road. . . . The evidence is overwhelming that recently and for years the [Sanders'] cattle have roamed at large across this section of road. The stock gaps impede the cattle's movement up the road, allowing the [Sanders] to have their cattle on the road but preventing the cattle from escaping onto land beyond the [Sanders'] property.

---

[2]*See* Tenn. Const. art. I, § 8, art. XI, § 8; *see also* U.S. Const. amend. XIV.

In recent years, members of the [County Commission] and other elected officials in Lincoln County have received numerous complaints about the presence of the cattle on the road and about the damage done to the road by the cattle. One school bus driver, who drives children on this road, has complained about the situation. Three or four years ago the [Sanders] bulldozed out an old stock fence along a portion of the road, and now there are no fences in existence which impede the [Sanders'] cattle from occupying the road. There have been some minor accidents as a result, but no major injuries, but the free passage of vehicles has often been impeded by the presence of the cattle and by the damage the cattle have done to the road.

In July of 1996, the [County Commission] established a general policy against having stock gaps across county roads. Letters from county officials and direct contact of the landowners by county officials communicated to several citizens the need to remove their stock gaps. Virtually all of the landowners except the [Sanders] have removed or agreed to remove their stock gaps. The [Sanders], however, refused to do so. As a result, the [Commission] passed a resolution on March 17, 1997, directing that the stock gaps on Martin Hollow Road be removed on May 20, 1997. The [Sanders] filed for an injunction against this action by the county on April 4, 1997.

. . . .

The evidence of the Defendants' witnesses, neighbors and county officials, and the photographs submitted into evidence established that the [Sanders'] cattle are frequently and in large numbers on the road and that they regularly obstruct passage on the road and do physical damage to the road. The county has a sufficient interest in the road to allow it to manage the presence of obstructions on the road. Removal of the stock gaps is an appropriate action to take to limit the presence of cattle on the road, although it is not a complete solution to the problem of the cattle on the road. . . .

If the resolution of March 17, 1997, were viewed in isolation, it might appear to single out and discriminate against the [Sanders]. The evidence in the case, however, makes it clear that the actual situation was that the [Sanders] were the lone offenders against a more general policy of the county. Other stock gaps which still exist elsewhere in the county are either in the process of being removed, are at points beyond which no one lives or no one other than the party who maintains the gaps, or in areas where there is no problem with cattle having access to the road. The [Sanders'] situation is unique in that removing the stock gaps on Martin Hollow Road will discourage the running of cattle on a publicly maintained road which is used by the general public. The policy is not discriminatory and is imminently (sic) reasonable.

On appeal, this court agreed with the chancellor's ruling that, although the Commission's resolution appeared to affect only the Sanders, the resolution did not deny them equal protection of the law because the Commission had applied the same policy to the Sanders as it had to other residents of the County. Accordingly, this court affirmed the chancellor's judgment rejecting the Sanders' equal protection challenge to the resolution. *Sanders v. Mansfield*, No.

01A01-9705-CH-00222, 1998 WL 57532, at *5 (Tenn. App. Feb. 13, 1998).

After this court released its opinion in *Sanders v. Mansfield*, the Sanders instituted the present action by filing a complaint in the Chancery Court of Lincoln County against Lincoln County and against Steve Graham, Chairman of the Lincoln County Commission. In its new complaint, the Sanders asserted that they had been denied equal protection of the law as the result of actions taken by the Defendants while the appeal in *Sanders v. Mansfield* was pending. Specifically, the Sanders alleged that, instead of enforcing the stock gap removal policy against two similarly-situated landowners, the Defendants removed the two affected roads, Gill Road and Endsley Road, from the County road list, thus exempting the other two landowners from its policy. The Sanders further alleged that stock gaps still were in place on Gill Road and Endsley Road, that cattle still were running at large on these roads, and that the danger to the public posed by the utilization of stock gaps on these roads was at least as great as the danger posed by the stock gaps on Martin Hollow Road, but that the Defendants had not removed Martin Hollow Road from the County road list. The Sanders sought a ruling that the Defendants' actions had violated their equal protection rights, an injunction requiring the Defendants to remove Martin Hollow Road from the Lincoln County road list, and an order permitting the Sanders to replace the two stock gaps on Martin Hollow Road. The Sanders also sought damages under 42 U.S.C. § 1983.

The Defendants responded to the Sanders' complaint by filing a motion for summary judgment wherein they asserted that the complaint failed to state a claim upon which relief could be granted and, alternatively, that the Sanders' complaint previously had been decided in the Sanders' first lawsuit against Jerry Mansfield and Donny Ray Hudson.

In opposing the Defendants' motion for summary judgment, Kevin Sanders submitted an affidavit in which he attested that stock gaps remained in place on Gill Road and Endsley Road and that between thirty and forty cattle were allowed to roam at large on these roads. Sanders' affidavit further indicated that three families lived beyond the stock gaps on Endsley Road and that the Outback Hideaway Camping Resort was located on Endsley Road.

The Sanders also submitted the affidavit of Gene Kesterson, the owner of the Outback

Hideaway Camping Resort, which was located at the terminus of Endsley Road. According to Kesterson's affidavit, the Lincoln County Commission voted to remove Endsley Road from the County road list despite the fact that the public used Endsley Road to access the Outback Hideaway Camping Resort and other properties. Kesterson confirmed that stock gaps and cattle still were present on Endsley Road.

The Defendants subsequently filed a motion to dismiss the Sanders' complaint for failure to state a claim upon which relief could be granted.[3] The Defendants' motion to dismiss purported to withdraw the Defendants' previously filed motion for summary judgment; however, the motion to dismiss specifically incorporated the contents of the motion for summary judgment. Like the previous summary judgment motion, the motion to dismiss argued that the Sanders' complaint failed to state a claim upon which relief could be granted and, alternatively, that the Sanders' claim was barred by principles of *res judicata*. The Defendants attached to their motion to dismiss the following documents from the *Sanders v. Mansfield* lawsuit: the Sanders' complaint filed April 4, 1997; the Chancellor's memorandum opinion rendered May 14, 1997; and this court's opinion released February 13, 1998.

After conducting a hearing, the trial court granted the Defendants' motion and entered an order dismissing the Sanders' complaint with prejudice. Although the trial court's order failed to indicate the basis for dismissal, in orally announcing its ruling at the conclusion of the December 29, 1998, hearing, the trial court indicated that it was dismissing the action based upon both grounds asserted in the Defendants' motion to dismiss. The trial court stated that

> this is, at its essence, the same case we had before. And to the extent that it's not, it's a case about action not taken against other folks, not a case about action taken against Mr. Sanders. More importantly: The technical requirements of an equal protection claim simply are not present here. Mr. Sanders is not part of a protected class, and there is a rational basis for the decision made by the County. So I will be dismissing the complaint.

On appeal, the Sanders contend that the trial court erred in ruling that their complaint

---

[3]*See* T.R.C.P. 12.02(6).

failed to state an equal protection claim and that their equal protection claim was barred by principles of *res judicata*. We agree.

Before reaching the issues raised by the Sanders, however, we find it necessary to address an issue that the Defendants have raised for the first time on appeal. Citing the Tennessee Governmental Tort Liability Act,[4] the Defendants contend that this court should affirm the dismissal of the Sanders' complaint because the chancery court lacked subject-matter jurisdiction to determine this action against the County and the Chairman of the Lincoln County Commission.

Although they did not raise this objection below, the Defendants may challenge the trial court's subject-matter jurisdiction for the first time on appeal. *Metropolitan Gov't v. Tennessee Solid Waste Disposal Control Bd.*, 832 S.W.2d 559, 561 (Tenn. App. 1991). Subject-matter jurisdiction cannot be conferred by waiver or consent. *In re Southern Lumber & Mfg. Co.*, 210 S.W. 639, 640 (Tenn. 1919); *Tritschler v. Cartwright*, 333 S.W.2d 6, 8 (Tenn. App. 1959). Because it "involves a tribunal's inherent power to hear and decide a particular controversy," subject-matter jurisdiction "can be questioned at any stage of the proceeding." *Computer Shoppe, Inc. v. State*, 780 S.W.2d 729, 734 (Tenn. App. 1989). Thus, the parties may raise the issue of subject-matter jurisdiction "at any time in any court." *In re Southern Lumber & Mfg. Co.*, 210 S.W. at 640; *accord Scales v. Winston*, 760 S.W.2d 952, 953 (Tenn. App. 1988); *see also* T.R.C.P. 12.08 (requiring court to dismiss action whenever it appears by suggestion of parties or otherwise that court lacks subject-matter jurisdiction).

In Tennessee, any claim for damages against a governmental entity must be brought in strict compliance with the terms of the Governmental Tort Liability Act (GTLA). *See* T.C.A. § 29-20-201(c) (Supp. 1996). The GTLA provides that the circuit courts shall have exclusive original jurisdiction over any action brought under the GTLA. *See* T.C.A. § 29-20-307 (Supp. 1996). Thus, the circuit court, and not the chancery court, has subject-matter jurisdiction over a claim for damages against a governmental entity. *Flowers v. Dyer County*, 830 S.W.2d 51, 53 (Tenn. 1992).

---

[4]*See* T.C.A. §§ 29-20-101 to -407 (1980 & Supp. 1996).

Although the GTLA's jurisdictional provisions make clear that a plaintiff bringing a claim for damages against a governmental entity must file the claim in the circuit court, the law does not specify where a plaintiff should file a claim against a governmental entity when the plaintiff is seeking relief other than damages. The GTLA apparently applies only to actions for damages against governmental entities. For instance, our supreme court has held that the GTLA's provisions apply to an action for damages against a governmental entity resulting from the entity's creation or maintenance of a temporary nuisance. *Paduch v. City of Johnson City*, 896 S.W.2d 767, 772 (Tenn. 1995). Accordingly, such a claim must be brought in the circuit court. *Flowers v. Dyer County*, 830 S.W.2d at 53; T.C.A. §§ 29-20-201(c), -307 (Supp. 1996). On the other hand, the supreme court also has held that, despite the GTLA's provisions, the chancery court retains the inherent jurisdiction to enjoin the governmental entity from maintaining such a nuisance. *Jenkins v. Loudon County*, 736 S.W.2d 603, 605 (Tenn. 1987). Thus, the court appears to be making a distinction between claims seeking damages and claims seeking injunctive relief.

This court previously made the same distinction in *Collier v. Memphis Light, Gas & Water Division*, 657 S.W.2d 771 (Tenn. App. 1983). In that case, we noted that the legislature has left little "room for doubt that actions against governmental entities for damages based on activities historically labeled 'nuisance' are now included in and covered by the [GTLA]." *Collier v. MLG&W*, 657 S.W.2d at 776. Nevertheless, we recognized that the chancery court retains the inherent jurisdiction to hear abatement of nuisance actions, and we observed that such actions are in the nature of proceedings for injunctive relief. *Id*. Similarly, in *Jones v. Louisville & Nashville Railroad Co.*, 1986 WL 3435, at *2 (Tenn. App. Mar. 21, 1986), we held that the chancellor correctly dismissed the plaintiffs' action for damages because "an action for damages of any sort, to the person or to property, arising from negligence or from conditions constituting a nuisance is within the [GTLA]." In the same case, we held that the chancellor erred in dismissing the plaintiffs' claim for injunctive relief to abate an alleged nuisance because "[t]here is nothing in the [GTLA] which removes the inherent power of a court of equity to abate a nuisance created by a governmental entity." *Jones v. L&N R.R. Co.*, 1986 WL 3435, at *3.

In addition to suits for injunctive relief, the courts of this state have permitted plaintiffs seeking declaratory relief against governmental entities to bring their suits in the chancery

court. *See Paduch v. City of Johnson City*, 896 S.W.2d 767 (Tenn. 1995); *Fallin v. Knox County Bd. of Comm'rs*, 656 S.W.2d 338 (Tenn. 1983); *Foley v. Hamilton*, 603 S.W.2d 151 (Tenn. App. 1980); *Baker v. Hancock County Election Comm'n*, 1987 WL 7717, at *3 (Tenn. App. Mar. 12, 1987). The Declaratory Judgment Act[5] provides that any person "affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder." T.C.A. § 29-14-103 (1980). In declaratory judgment actions involving the validity of a municipal ordinance or franchise, the Act requires that the interested municipality shall be made a party to the action. T.C.A. § 29-14-107(b) (1980).

Although the Declaratory Judgment Act appears to limit declaratory judgment actions against a municipality to those actions involving the validity of a municipal ordinance or franchise, the courts of this state have been liberal in allowing plaintiffs to seek declaratory relief against municipalities under the Act.[6] In *Paduch v. City of Johnson City*, 896 S.W.2d 767, 768 (Tenn. 1995), for example, the plaintiffs filed an action in chancery court which sought, *inter alia*, a determination as to whether a street abutting their land was a public street that the city was obligated to maintain. The supreme court held that the chancery court properly treated the plaintiffs' action as a suit for declaratory judgment. *Paduch v. Johnson City*, 896 S.W.2d at 771. In *Foley v. Hamilton*, 603 S.W.2d 151, 152 (Tenn. App. 1980), homeowners in a subdivision sued the subdivision developers and Sevier County seeking, *inter alia*, a determination as to which party was responsible for maintaining roads in the subdivision. In reversing the chancery court's dismissal of the action and remanding it for a trial on the merits, this court recognized that the homeowners' complaint presented justiciable issues under the Declaratory Judgment Act and, further, that the

---

[5]*See* T.C.A. §§ 29-14-101 to -113 (1980).

[6]In contrast, the courts have held that the Declaratory Judgment Act does not give trial courts jurisdiction to issue declaratory judgments against the state or its officers. *L.L. Bean, Inc. v. Bracey*, 817 S.W.2d 292, 297-98 (Tenn. 1991); *Northern Telecom, Inc. v. Taylor*, 781 S.W.2d 837, 839-40 (Tenn. 1989), *cert. denied*, 496 U.S. 905 (1990); *Spencer v. Cardwell*, 937 S.W.2d 422, 424 (Tenn. App. 1996). An exception to this rule arises under section 29-14-103 of the Declaratory Judgment Act, which specifically authorizes trial courts to hear declaratory judgment actions seeking the construction of a statute or challenging a statute's validity. *Campbell v. Sundquist*, 926 S.W.2d 250, 256-57 (Tenn. App. 1996); T.C.A. § 29-14-103 (1980). In such cases, the Act requires that the state attorney general be made a party to the proceeding. *Buena Vista Special Sch. Dist. v. Board of Election Comm'rs*, 116 S.W.2d 1008, 1009 (Tenn. 1938); *Peters v. O'Brien*, 278 S.W. 660, 660 (Tenn. 1925); T.C.A. § 29-14-107(b) (1980).

county was an interested party within the meaning of section 23-1107 (now section 29-14-107) of the Act. *Foley v. Hamilton*, 603 S.W.2d at 154. In *Baker v. Hancock County Election Commission*, 1987 WL 7717, at *3 (Tenn. App. Mar. 12, 1987), this court recognized that the plaintiffs could maintain a declaratory judgment action in the chancery court whereby the plaintiffs sought a determination of the location of a county line, provided both interested counties were made parties to the proceeding as required by the Declaratory Judgment Act. Strictly speaking, these actions did not involve the validity of a municpal ordinance or franchise; however, the courts permitted the plaintiffs to maintain declaratory judgment actions against the interested municipalities in the chancery court in keeping with the Declaratory Judgment Act's directive that the Act "be liberally construed and administered." T.C.A. § 29-14-113 (1980).[7]

In *Fallin v. Knox County Board of Commissioners*, 656 S.W.2d 338 (Tenn. 1983), the Knox County Board of Commissioners enacted a resolution that rezoned a 10.6 acre tract of land from an Agricultural classification to a Residential "B" classification. The rezoning permitted the owner of the tract to build approximately 275 apartment units on her land. The surrounding properties remained zoned either Agricultural or Residential "A," which permitted the construction of only one single-family residence per acre. *Fallin v. Knox County Bd. of Comm'rs*, 656 S.W.2d at 340. The supreme court permitted the plaintiff, a neighboring landowner, to challenge the Board's rezoning action by bringing a declaratory judgment action against the Board in the chancery court. *Id*. at 342. The basis of the plaintiff's challenge was his claim that the Board's rezoning constituted "spot zoning" in violation of the equal protection provisions of the Tennessee Constitution. *Id*. at 343. The court specifically approved the use of the declaratory judgment action to challenge the validity of an ordinance, resolution, or other legislative action of a municipality enacting or amending zoning legislation. *Id*. at 342; *cf*. *McCallen v. City of Memphis*, 786 S.W.2d 633, 639 (Tenn. 1990) (holding that common-law writ of certiorari is appropriate review procedure of zoning action that is administrative rather than legislative).

We recognize that the issue of subject-matter jurisdiction was not raised in the

---

[7]Section 29-14-113 provides that the Declaratory Judgment Act "is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and is to be liberally construed and administered." T.C.A. § 29-14-113 (1980).

foregoing cases wherein the chancery court heard declaratory judgment actions against governmental entities. Even where the parties have not raised the issue, however, both the trial court and the appellate courts have the duty to consider the issue of subject-matter jurisdiction, inasmuch as any judgment rendered without jurisdiction is a nullity. *Shell v. State*, 893 S.W.2d 416, 418 (Tenn. 1995); *State ex rel. Dep't of Soc. Servs. v. Wright*, 736 S.W.2d 84, 85 n.2 (Tenn. 1987); *Morrow v. Bobbitt*, 943 S.W.2d 384, 392 (Tenn. App. 1996); *Scales v. Winston*, 760 S.W.2d 952, 953 (Tenn. App. 1988); *McFerrin v. McFerrin*, 191 S.W.2d 946, 948 (Tenn. App. 1945). Accordingly, we conclude that the appellate courts' dispositions of these cases on appeal constitute at least implicit rulings that the chancery court had jurisdiction to hear the declaratory judgment actions against the governmental entities involved. *See Campbell v. Sundquist*, 926 S.W.2d 250, 257 (Tenn. App. 1996) (concluding that, although issue of subject-matter jurisdiction was not raised in *Leech v. American Booksellers Ass'n*, 582 S.W.2d 738 (Tenn. 1979), supreme court's holding therein that Tennessee obscenity statute was unconstitutional constituted implicit ruling that court had jurisdiction to entertain declaratory judgment action challenging statute's constitutionality).

In the present action, the Sanders primarily sought declaratory and injunctive relief against the County and the Chairman of the County Commission. In essence, the Sanders' complaint sought a ruling that the Defendants' actions had violated their equal protection rights, an injunction requiring the Defendants to remove Martin Hollow Road from the Lincoln County road list, and an order permitting the Sanders to replace the two stock gaps on Martin Hollow Road.[8] We can find nothing within the provisions of the GTLA that would prohibit the Sanders from maintaining this action in the chancery court. Moreover, previous decisions of our supreme court and this court have recognized, either explicitly or implicitly, that the chancery court retains subject-matter jurisdiction over the Sanders' claims for equitable relief against the Defendants. Accordingly, we reject the Defendants' argument that the trial court lacked subject-matter jurisdiction over the claims asserted in the Sanders' complaint.

Having concluded that the trial court had subject-matter jurisdiction to decide this

---

[8]Pursuant to 42 U.S.C. § 1983, the complaint also sought damages for the Defendants' alleged violation of the Sanders' constitutional rights; however, the Sanders abandoned their claim for damages during these proceedings.

action, we now turn to the issues raised on appeal by the Sanders, the first being whether the trial court erred in ruling that the Sanders' claim was barred by principles of *res judicata*. The doctrine of *res judicata* "bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit." *Massengill v. Scott*, 738 S.W.2d 629, 631 (Tenn. 1987). Thus, the doctrine of *res judicata* applies not only to issues which were actually determined in an earlier proceeding, but to "all claims and issues which were relevant and which could reasonably have been litigated in a prior action." *American Nat'l Bank & Trust Co. v. Clark*, 586 S.W.2d 825, 826 (Tenn. 1979). Stated another way, the doctrine "extends to all matters material to the decision of the case which the parties exercising reasonable diligence might have brought forward at the time." *Collins v. Greene County Bank*, 916 S.W.2d 941, 946 (Tenn. App. 1995). Conversely, the doctrine of *res judicata* does not bar claims that were not or could not have been litigated in the former suit. *Stacks v. Saunders*, 812 S.W.2d 587, 591 (Tenn. App. 1990). The doctrine "is based on the public policy favoring finality in litigation and does not depend upon correctness or fairness, as long as the underlying judgment is valid." *Lee v. Hall*, 790 S.W.2d 293, 294 (Tenn. App. 1990).

In order to successfully assert the doctrine of *res judicata* as a defense, the defendant must demonstrate that a court of competent jurisdiction rendered a judgment on the merits in a prior proceeding and, further, that the prior proceeding involved the same parties (or their privies) and the same cause of action as the present lawsuit. *Lee v. Hall*, 790 S.W.2d at 294. For purposes of these proceedings, the parties appear to agree that the first lawsuit involved the same parties or their privies and that the trial court in the first action rendered a valid judgment on the merits;[9] however, the parties dispute whether the first lawsuit initiated by the Sanders involved the same cause of action as the present proceeding. In this regard, the Defendants contend that the successive lawsuits involved the same cause of action because both lawsuits involved equal protection claims whereby the Sanders challenged the County's stock gap removal policy.

---

[9]We note, however, that the Defendants have challenged the chancery court's subject-matter jurisdiction over the Sanders' present action. If our analysis is incorrect and the chancery court does not have subject-matter jurisdiction over the Sanders' claims, then the chancery court likewise could not have exercised subject-matter jurisdiction over the Sanders' claims in the first action.

We believe that this argument oversimplifies the bases of the different proceedings instituted by the Sanders against the County and its officials. As in the prior proceeding, the Sanders' present complaint raises an equal protection challenge to certain actions taken by County officials with regard to the County's stock gap removal policy. The actions challenged in the second lawsuit, however, are distinctly different from those challenged in the first proceeding.

The Sanders' first lawsuit challenged the County Commission's passage of a resolution that required the removal of the stock gaps on Martin Hollow Road. Observing that the Commission had a rational basis for passing the resolution, this court affirmed the trial court's ruling that the resolution did not deny the Sanders equal protection of the law. *Sanders v. Mansfield*, No. 01A01-9705-CH-00222, 1998 WL 57532, at *5 (Tenn. App. Feb. 13, 1998). Our affirmance of the judgment was based largely on the trial court's findings that the County had uniformly applied its stock gap removal policy to landowners along County roads and that the Sanders appeared to be the lone offenders against this policy. *Sanders v. Mansfield*, 1998 WL 57532, at *5.

In contrast, the Sanders' present lawsuit does not challenge the County Commission's act of passing a resolution aimed solely at property owners along Martin Hollow Road. Rather, the Sanders' current equal protection claim challenges the Defendants' subsequent actions of exempting property owners along two other County roads from the County's general policy requiring the removal of stock gaps from all County roads. Specifically, the Sanders' complaint contends that, after the trial court rendered its decision in the first lawsuit, the Defendants failed to uniformly apply the County's stock gap removal policy to all landowners along County roads and instead exempted two similarly-situated landowners from the policy by removing from the County road list the two affected roads, Gill Road and Endsley Road. The Sanders contend that, in taking these actions, the Defendants impermissibly conferred a benefit upon certain landowners in Lincoln County while denying the same benefit to the Sanders.

As set forth in their complaint, the Sanders' present equal protection claim is separate and distinct from the equal protection claim litigated in the Sanders' first action. Moreover, the Sanders' present equal protection claim was not and could not have been raised in the prior proceeding. At the time the Sanders initiated the first proceeding, the Defendants had not exempted

the other property owners from the effects of the County's stock gap removal policy. The Defendants did not act to remove Gill Road and Endsley Road from the County road list until after the Sanders appealed the trial court's judgment to this court. Under these circumstances, we conclude that the doctrine of *res judicata* does not bar the Sanders' present equal protection claim.

Our conclusion that the Sanders were not precluded from bringing a second equal protection claim against the County and its officials is bolstered by our supreme court's decision in *King v. Brooks*, 562 S.W.2d 422 (Tenn. 1978). In *King v. Brooks*, the court held that the doctrine of *res judicata* did not bar a breach of contract action even though the parties previously had litigated a breach of contract action involving the same contract. In the first lawsuit, two utility districts brought a breach of contract action against City of Fayetteville officials based on the utility districts' contention that the city incorrectly interpreted the parties' contract when it increased water rates in 1974. The chancellor agreed with the utility districts' interpretation of the contract provision at issue and issued a judgment interpreting the provision accordingly. *King v. Brooks*, 562 S.W.2d at 423. After the city implemented a new rate schedule in 1975, the utility districts again filed a breach of contract action against the city. This time, the utility districts contended that, although the city apparently had followed the chancellor's prior decree in calculating the new water rates, the city's method of calculation had produced an inequitable result. *Id*.

On appeal, the supreme court rejected the city's argument that the utility districts' second breach of contract action was barred by principles of *res judicata*. The court reasoned that, although the subject matter of the two suits was the same, each lawsuit presented a distinct breach of contract claim based upon different rate increases by the city. The court explained:

> The maintenance of the present action is not barred by the doctrine of *res judicata*, which, strictly speaking, bars the bringing of a suit on a cause of action that has already been the subject of a final judgment in prior litigation. *See National Cordova [Corp.] v. City of Memphis*, 214 Tenn. 371, 380 S.W.2d 793 (1964). That situation is not presented here, for, although the subject matter of the two suits between the districts and the City is the same, the cause of action that is the basis for each is not: Fayetteville's alleged present breach of contract gives rise to a cause of action distinct from that which arose as a result of the alleged breach that was the subject of the suit based on the 1974 rate increase.

*King v. Brooks*, 562 S.W.2d at 423.[10]

The correct application of *res judicata* principles may require courts "to distinguish between the subject matter of an action and a cause of action" and to recognize that "the same subject matter may give rise to a new cause of action." *Nobes v. Earhart*, 769 S.W.2d 868, 873 (Tenn. App. 1988). In our view, this is such a case. The Sanders have pursued two successive equal protection claims against County officials challenging the County's enforcement of its stock gap removal policy against the Sanders. Although the Sanders' two claims superficially might appear to be the same claim, the basis of each of the claims was different. In the first lawsuit, the Sanders challenged the County's action of passing a resolution which affected only property owners and residents along Martin Hollow Road. In contrast, in the second proceeding, the Sanders challenged the County's later decision to exempt other landowners from the general policy by removing the affected roads from the County road list. We agree with the Sanders' argument on appeal that each of these actions by the County gave rise to a potential equal protection claim and that the prior adjudication of one of the claims did not preclude the subsequent litigation of the other.

Our conclusion that the Sanders' present equal protection claim is not barred by principles of *res judicata* leads us to the remaining issue raised by the Sanders whereby they contend that the trial court erred in ruling that their complaint failed to state a claim upon which relief could be granted. In announcing its ruling from the bench, the trial court indicated that, even if the Sanders' current claim was not barred by the doctrine of *res judicata*, the court still would dismiss the action because the Sanders' complaint failed to state an equal protection claim against the Defendants.

The equal protection provisions of the Tennessee Constitution and the United States Constitution "confer essentially the same protection upon the individuals subject to those provisions." *Tennessee Small Sch. Sys. v. McWherter*, 851 S.W.2d 139, 152 (Tenn. 1993). Stated

---

[10]Ultimately, however, the utility districts' second breach of contract claim was unsuccessful because the doctrine of collateral estoppel precluded them from relitigating the issue of the interpretation of the contract's rate increase provision. The utility districts were bound by the chancellor's interpretation of this provision as set forth in his first decree. *King v. Brooks*, 562 S.W.2d at 424.

simply, "[t]he concept of equal protection espoused by the federal and our state constitutions guarantees that 'all persons similarly circumstanced shall be treated alike.'" *Id*. at 153 (quoting *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)).

The United States Constitution's equal protection provision appears in that document's Fourteenth Amendment, which states that

> [n]o state shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV.

The Tennessee Constitution's equal protection provisions appear in Article I, Section 8, and Article XI, Section 8. Article I, Section 8, provides that

> no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land.

Tenn. Const. art. I, § 8. Article XI, Section 8, provides that

> [t]he Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunitie, [immunities] or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law.

Tenn. Const. art. XI, § 8.

These two provisions of the Tennessee Constitution apply to different circumstances, but their combined effect is to guarantee equal privileges and immunities for all those similarly situated. *Tennessee Small Sch. Sys. v. McWherter*, 851 S.W.2d at 152. Article I, Section 8, applies when the legislature creates a classification that is designed to subject citizens "to the burden of

certain disabilities, duties, or obligations, not imposed upon the community at large." ***Dibrell v. Morris' Heirs***, 15 S.W. 87, 92 (Tenn. 1891), ***quoted in Tennessee Small Sch. Sys. v. McWherter***, 851 S.W.2d at 152-53. In contrast, Article XI, Section 8, comes into play when the legislature's classification is designed to confer upon citizens "certain rights, privileges, immunities, or exemptions not enjoyed by the community at large." ***Dibrell v. Morris' Heirs***, 15 S.W. at 92. Although the Tennessee Constitution permits the legislature to create such classifications, the Constitution requires that, in doing so, the legislature must impose the same disabilities, duties, and obligations, or confer the same rights, privileges, immunities, and exemptions, upon "every one who is in, or may come into, the situation and circumstances which constitute the reason for, and the basis of, the classification." ***Id***. In short, the legislature must treat alike "all who fall within, or can reasonably be brought within the classification." ***Harrison v. Schrader***, 569 S.W.2d 822, 826 (Tenn. 1978).

Contrary to the trial court's ruling, we conclude that the Sanders' complaint successfully states an equal protection claim against the Defendants. The Sanders' complaint contends that the Defendants, by removing certain roads from the County road list, have exempted similarly-situated landowners from the County's stock gap removal policy while denying the same exemption or benefit to the Sanders. These allegations are similar to those made in other cases wherein this court has recognized that an equal protection claim may arise when a municipality denies the plaintiff a benefit that it has conferred upon similarly-situated citizens.[11] ***See, e.g., Eye Clinic v. Jackson-Madison County Gen. Hosp.***, 986 S.W.2d 565, 567, 580 (Tenn. App. 1998) (wherein plaintiff eye doctors argued that county hospital district violated their equal protection rights by unreasonably denying them membership in preferred provider organization); ***Posey v. City of Memphis***, No. 02A01-9603-CH-00058, 1997 WL 36811, at **2-4 (Tenn. App. Jan. 31, 1997) (wherein firefighters alleged that city's method of paying retirement benefits violated firefighters' equal protection rights because settlement agreement executed by city gave preferential treatment

---

[11]We agree with the Defendants' contention on appeal that the Sanders failed to state a claim for selective enforcement. ***See generally Futernick v. Sumpter Township***, 78 F.3d 1051, 1056-60 (6th Cir.), ***cert. denied***, 519 U.S. 928 (1996). In our view, however, the Sanders' complaint successfully states an equal protection claim without regard to this theory. The Sanders are not merely complaining of the Defendants' selective enforcement of the County's stock gap removal policy. The Sanders also complain that the Defendants have taken affirmative steps to exempt other landowners from the effects of the policy while denying a similar exemption to the Sanders.

to police officers of same rank); *see also Bratton v. City of Florence*, 688 So. 2d 233, 235 (Ala. 1996) (where developers alleged that city violated their equal protection rights by denying their application to build apartment complex while issuing permit for larger apartment complex in immediate vicinity).

On appeal, the Defendants contend that, inasmuch as the Sanders have not alleged membership in a protected class or the violation of a fundamental right, the rational basis test applies to their equal protection claim. Under this lenient standard of review, the Defendants' disparate treatment of the Sanders and the other landowners will survive constitutional scrutiny "if some reasonable basis can be found" for the Defendants' action, "or if any state of facts may reasonably be conceived to justify it." *Harrison v. Schrader*, 569 S.W.2d at 825, *quoted in Tennessee Small Sch. Sys. v. McWherter*, 851 S.W.2d at 153; *see also Eye Clinic v. Jackson-Madison County Gen. Hosp.*, 986 S.W.2d at 580. The Defendants insist that their actions meet this test because they are relevant to the County's interest in maintaining its roads in a safe condition.

We have no doubt that the County's interest in maintaining safe roads provided a reasonable basis for implementing the County's stock gap removal policy. In fact, in its prior memorandum opinion, which this court affirmed, the trial court found that the County's policy was not discriminatory and that it was eminently reasonable. *Sanders v. Mansfield*, No. 01A01-9705-CH-00222, 1998 WL 57532, at *5 (Tenn. App. Feb. 13, 1998). The County's stock gap removal policy, however, is not the disparate legislative action being tested here. Rather, the action being tested is the Defendants' decision to exempt other landowners who appear to be similarly-situated to the Sanders from the effects of the County's general stock gap removal policy. In this regard, the determinative issue becomes "whether the facts show some reasonable basis for the disparate . . . action." *Tennessee Small Sch. Sys. v. McWherter*, 851 S.W.2d at 153 (citing *Harrison v. Schrader*, 569 S.W.2d at 825-26).

We recognize that, when fully developed, the facts may well show a reasonable basis for the Defendants' disparate treatment of the Sanders and the other landowners.[12] The record

---

[12]*See, e.g.*, *Watson v. City of Gatlinburg*, 699 S.W.2d 171, 172-73 (Tenn. App. 1985) (concluding that rational basis existed for city's action of singling out plaintiff employee for

currently before this court, however, fails to make such a showing. To the contrary, the affidavits submitted by the Sanders in opposition to the Defendants' motion for summary judgment[13] indicate that large numbers of cattle roam at large on Endsley Road and Gill Road just as they did on Martin Hollow Road. Moreover, the affidavits indicate that, just as members of the public use Martin Hollow Road to access their homes, the public also uses at least one of the roads, Endsley Road, to access three different residences, as well as a local business, the Outback Hideaway Camping Resort. In light of this evidence, we find it necessary to remand this cause for the trial court's reconsideration of the Sanders' equal protection claim against the Defendants. *See Posey v. City of Memphis*, 1997 WL 36811, at *4.[14]

The trial court's judgment of dismissal is reversed, and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the Defendants, for which execution may issue if necessary.

_____

FARMER, J.

_____

HIGHERS, J. (Concurs)

_____

LILLARD, J. (Concurs)

_____

termination where evidence showed that, although other city employees were involved in incident involving abuse of city prisoner, plaintiff was senior employee who played major role in incident).

[13]We also conclude that the Defendants' attempt to convert their motion for summary judgment into a motion to dismiss was ineffectual, inasmuch as the parties supported their arguments with evidentiary materials beyond their pleadings and the trial court's judgment recites that it was based on "the entire record in this matter." *See Adams TV of Memphis, Inc. v. ComCorp of Tenn., Inc.*, 969 S.W.2d 917, 920 (Tenn. App. 1997); *Pacific E. Corp. v. Gulf Life Holding Co.*, 902 S.W.2d 946, 951-52 (Tenn. App. 1995); T.R.C.P. 12.02.

[14]*See also Bratton v. City of Florence*, 688 So. 2d 233, 235 (Ala. 1996) (holding that city was not entitled to summary judgment on developers' claim that city violated their equal protection rights by denying their application to build apartment complex and by issuing permit for larger apartment complex in immediate vicinity where proffered evidence failed to show articulable basis for disparate treatment).